UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Mark Robinson )
15627 Chadsey Lane )
Brandywine, MD 20613 )
) Case No. 13-1297
    Plaintiff, )
v. )
)
) COMPLAINT
The District of Columbia ) JURY TRIAL DEMANDED
441 4th Street, NW )
Washington, DC 20001 )
)
    Defendant. )
_____ )

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL ON ALL ISSUES**

COMES NOW Mark Robinson (hereinafter "Plaintiff"), by and through his undersigned counsel, and alleges against the District of Columbia (hereinafter "Defendant") claims including violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and violations of the Federal Civil Rights Act of 1866, 42 U.S.C. § 1981. Additionally, Plaintiff sets forth claims under the DC Whistleblower Protection Act, DC ST § 1-615.51. Plaintiff sets forth the facts, claims and seeks relief a follows:

**JURISDICTION AND VENUE**

1. This court has original jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

2. This court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue in this court is proper pursuant to 28 U.S.C. § 1391, as Defendant's misconduct that give rise to Plaintiff's claims occurred in the District of Columbia.

**FACTUAL ALLEGATIONS**

1

4. Plaintiff is an African-American male.

5. Plaintiff started employment with Defendant as a police officer at the Metropolitan Police Department ("MPD") on April 23, 1990.

6. Plaintiff became Sergeant in 2004.

7. In November 2006, Plaintiff was detailed to Automated Traffic Enforcement Unit ("ATEU").

8. In January 2010, Plaintiff informed MPD that Program Manager Lisa Sutter, a white female, was misappropriating government funds and had an improper relationship with a non-profit organization.

9. On or about July 10, 2010, an investigation was started regarding what Plaintiff reported, and despite significant evidence supporting Plaintiff's complaint, including invoices, restaurant receipts, witnesses, and e-mail admissions, the investigation was ended for insufficient facts.

10. On or about November 29, 2010, Ms. Sutter reduced Plaintiff's end of the year performance evaluation from a 45 (Significantly Exceeds Expectation) for the year before, to a 34 (Exceeds Expectation), giving Plaintiff a rating of 2 (Does Not Meet Expectations) in several categories. Ms. Sutter provided no documentation or justification for her evaluation.

11. In 2011, Plaintiff was chastised in front of his co-workers and subordinates by Lisa Sutter on multiple occasions, clearly in response to Plaintiff's reporting of her wrongdoing.

12. On or about June 2, 2011, Plaintiff submitted a Complaint to the MPD's Internal Affairs Division (IAD) about Ms. Sutter improperly voiding citations for certain individuals. Again, Plaintiff's complaint resulted in no disciplinary action.

13. On or about July 27, 2011, Plaintiff's duties and responsibilities were changed, wherein, he was no longer allowed to supervise subordinates, complete field assignments, or interact with contractors and city agencies.

14. Despite the fact that Plaintiff's duties were changed, Sergeant Schaeffer, a Caucasian male and an officer similarly situated to Plaintiff, was still allowed to perform the aforementioned duties.

15. On or about November 18, 2011 and December 6, 2011, Ms. Sutter sent e-mails to Plaintiff's subordinates and officials stating that Plaintiff could no longer sign overtime slips, while Sergeant Schaeffer was still authorized to approve and sign such overtime slips.

16. On or about November 29, 2011, Plaintiff notified MPD that Ms. Sutter set up Portable Speed Unit (PSU) Sites incorrectly and she was required by MPD to turn them off until they were brought into compliance.

17. On or about December 8, 2011, Plaintiff complained of discrimination to his superiors at the MPD.

18. On or about December 12, 2011, Plaintiff was summoned to MPD/IAD due to Complaints filed against him by Ms. Sutter, clearly in retaliation for his reporting her wrongful activities. Both Complaints were later dismissed for lack of factual support.

19. On or about December 14, 2011, Plaintiff missed a scheduled training appointment at a gun range, for which he received a PD 750 Dereliction of Duty, requiring corrective action.

20. On or about December 18, 2011, Plaintiff was involuntarily detailed to the Special Events Branch (SEB), being told that ATEU was being civilianized. As a result, Plaintiff's salary was significantly reduced.

21. On or about July 11, 2012, Plaintiff met with Chairman Phil Mendelson at his office and reported the multiple violations involving Ms. Sutter and MPD's reluctance to properly investigate or discipline.

22. On or about September 24, 2012, Plaintiff testified at a council hearing before Chairman Phil Mendelson regarding multiple violations involving Ms. Sutter.

23. On or about October 8, 2012, Plaintiff was told that he could not participate in the overtime program with ATEU, while other sworn officers were allowed to.

24. On or about January 2013, Plaintiff appeared on the local news to report the wrongdoing that was going on within the MPD's Automated Traffic Enforcement Unit.

25. Plaintiff continued to request to participate in the overtime program and was consistently denied.

26. On or about July 30, 2013, Plaintiff filed a grievance with his union, asking to go back to ATEU as it was not civilianized as claimed and a sworn officer had taken over his job. His request was denied.

27. Plaintiff filed complaints with the EEOC in August of 2011 and December of 2011 claiming discrimination and retaliation. He received his Right to Sue Letter and proceeded with this suit.

## COUNT I – DISPARATE TREATMENT DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

28. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

29. In order to establish a *prima facie* case of disparate treatment discrimination under Title VII, plaintiff must establish that "(1) [he] is a member of a protected class; (2) [he] suffered

4

an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stellar v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) (internal citation omitted).

30. Plaintiff is a member of a protected class (African-American).

31. Plaintiff suffered an adverse employment action when his duties were restricted, when he became the subject of unsubstantiated complaints and ridicule by Ms. Sutter, and when he was involuntarily detailed out to a different branch under the guise of civilianizing the unit, wherein his salary was significantly reduced.

32. The unfavorable actions give rise to an inference of discrimination as a Caucasian officer was allowed to perform the duties that Plaintiff was not allowed to perform and another Caucasian employee was not disciplined for her well documented misconduct while Plaintiff was disciplined for actions far less significant.

## COUNT II – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

33. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

34. In order to establish a *prima facie* case of retaliation under Title VII, an employee must show that the employee engaged in a protected activity, that the employee suffered adverse employment decisions, and that there was a causal connection between the protected activity and the adverse employment action. *See Carter-Obayuwana v. Howard University*, 764 A.2d 779 (D.C. 2001).

35. Plaintiff engaged in a protected activity by reporting discrimination and misconduct by his supervisor to Defendant, and by filing Complaints with EEOC.

36. Plaintiff suffered adverse employment decisions as he received a lower than usual performance evaluation, became the subject of unsubstantiated complaints, his duties were reduced, and he was involuntarily detailed out to another branch, as a result of which his salary was significantly reduced.

37. There is a causal connection between the protected activities and the adverse employment decisions, as they are close in time and proximity, and involve the same people.

## COUNT III – UNLAWFUL DISCRIMINATION IN VIOLATION OF THE FEDERAL CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

38. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

39. The Supreme Court recently stated in Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475 (2006), that:

> Among the many statutes that combat racial discrimination, § 1981, originally § 1 of the Civil Rights Act of 1866, 14 Stat. 27, has a specific function: It protects the equal right of "all persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. The statute currently defines "make and enforce contracts" to "include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).

40. Plaintiff's right to make and enforce a contract has been infringed.

41. Plaintiff is a member of a protected class (African-American).

42. Plaintiff suffered an adverse employment action as he received a lower than usual performance evaluation, became the subject of unsubstantiated complaints, his duties were reduced, and he was involuntarily detailed out to another branch, as a result of which his salary was significantly reduced because of his race.

43. Plaintiff was denied the right to equal treatment by Defendant as a result of his race (African-American), as Plaintiff was restricted in his duties while a Caucasian officer similarly situated to Plaintiff was not.

44. Defendant acted in a discriminatory manner that a reasonable person would find objectively unreasonable.

45. Defendant authorized, directed, and participated in this discriminatory conduct.

## COUNT IV – VIOLATION OF THE DC WHISTLEBLOWER PROTECTION ACT

46. DC Code § 1-615.53(a) provides that "A supervisor shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order."

47. Plaintiff engaged in whistleblower activities on multiple occasions by reporting the waste, fraud, abuse and other wrongful actions that Ms. Sutter had engaged in to the Internal Affairs Department, to Chairman Phil Mendelson which prompted Plaintiff to testify in a council hearing, and also by going on the news and reporting the wrongdoing within the MPD's Automated Traffic Enforcement Unit.

48. As a result of Plaintiff's actions in reporting the wrongdoing, he was stripped of duties, denied the benefit of overtime, and involuntarily detailed to another unit, which clearly violates the DC Whistleblower Protection Act.

WHEREFORE, Plaintiff, Mark Robinson, prays for judgment against Defendant for not less than $750,000 as follows:

a. That judgment be entered in his favor against Defendant;

b. For liquidated damages in an amount to be proven at trial;

c.  For unliquidated damages for pain and suffering in an amount to be proven at trial;

d.  For other general and special damages in an amount to be proven at trial;

e.  For attorney's fees and other costs of brining suit;

f.  For prejudgment interest;

g.  For such other relief that the court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests that all matters contained in this Complaint be tried by Jury.

Respectfully Submitted,

THE BEZDICEK LAW FIRM

Dated:  August 27, 2013

By:

Jennifer L. Bezdicek, Esq. [Bar # 979041]
20 F Street NW, Suite 700
Washington, DC 20001
(202) 617-0707
jbezdicek@bezdiceklaw.com