UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**MARK ROBINSON**                   )
                                    )
    **Plaintiff,**         )
                                    )
    v.                     )  Civil Action No. 13-1297 (ESH)
                                    )
**DISTRICT OF COLUMBIA,**           )
                                    )
    **Defendant.**          )
_____ )

## MEMORANDUM OPINION

Plaintiff Mark Robinson, an African-American, has sued the District of Columbia, alleging unlawful race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and unlawful retaliation under the District of Columbia Whistleblower Protection Act. Before the Court is defendant's motion to dismiss plaintiff's complaint as judicially estopped because plaintiff failed to disclose these causes of action during his now-closed bankruptcy proceeding.[1] For the reasons stated below, defendant's motion will be granted and the case will be dismissed.

## BACKGROUND

The alleged discriminatory and retaliatory actions underlying plaintiff's complaint occurred between November 29, 2010 and July 30, 2013. (*See generally* First Amd. Compl.,

---

[1] Def.'s Mot. to Dismiss ("Mot."), Nov. 4, 2013 [Dkt. No. 14]; Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), Nov. 18, 2013 [Dkt. No. 16]; Def.'s Reply in Furtherance of Mot. to Dismiss, Nov. 25, 2013 [Dkt. No. 17]. On January 6, 2014, the Court noted that, based on the amended complaint and other relevant filings, this case seemed "to be a prime candidate for the application of judicial estoppel." (Order, Jan. 6, 2014 [Dkt. No. 18] at 1.) Considering judicial estoppel's basis in equity, however, the Court "provide[d] plaintiff with two weeks to produce evidence supporting . . . unsupported factual assertions in his opposition brief" before considering the merits of defendant's motion to dismiss. (*Id.* at 1-2.) On January 20, 2014, Plaintiff produced two affidavits in support of his opposition brief. (Pl.'s Production of Evid. in Compliance with Order, Jan. 20, 2014 [Dkt. No. 19].)

1

Oct. 18, 2013 [Dkt. No. 11] ¶¶ 7-27.)  Plaintiff filed complaints with the Equal Employment Opportunity Commission ("EEOC") in August and December of 2011 claiming discrimination and retaliation, respectively.  (*Id.* ¶ 28.)  He received right-to-sue letters for his complaints on May 30 and June 25, 2013.  (Notices of Right to Sue [Dkt. No. 14-3] at 1, 4.)  He filed this action on August 27, 2013, seeking $750,000 in damages.  (Compl., Aug. 27, 2013 [Dkt. No. 1] at 7.)

According to his complaint, "[a]s a result of Defendant's actions against Plaintiff, [plaintiff] . . . suffered significant monetary losses, which led to his [and his wife's] filing of bankruptcy."  (First Amd. Compl. at ¶ 29.)  Plaintiff and his wife filed for bankruptcy on July 9, 2012, while both of plaintiff's complaints before the EEOC remained pending.  *In re: Mark E. Robinson & Kimberly A. Robinson*, No. 12-22685, Dkt. 1 (Bankr. D. Md. July 9, 2012).  In their joint and voluntary bankruptcy petition, plaintiff did not list the pending EEOC complaints as a personal asset under Item 21 on Schedule B, which required him to list and estimate the value of "[o]ther contingent and unliquidated claims of every nature . . . ."  (*Id.* at 13.)  Nor did he list the EEOC complaints on the Statement of Financial Affairs, which required him to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."  (*Id.* at 29.)  Plaintiff declared under penalty of perjury that he had read the bankruptcy petition and that its contents were true and accurate.  (*Id.* at 35.)  The Robinsons were represented by counsel (though not the counsel in this action) during these proceedings, and plaintiff states that "had [he] known that an EEOC filing would be relevant, [he] would have immediately disclosed that information."  (Aff. of Mark Robinson, Jan. 20, 2014 [Dkt. No. 19-2] ¶ 7.)

Although plaintiff and his wife initially filed for bankruptcy under Chapter 13, they voluntarily converted the petition to one under Chapter 7 on February 11, 2013.  *In re: Mark E.*

2

*Robinson & Kimberly A. Robinson*, No. 12-22685, Dkt. 32 (Bankr. D. Md. Feb. 11, 2013). The U.S. Bankruptcy Court for the District of Maryland entered an order granting plaintiff and his wife a discharge on May 21, 2013, less than a week before the EEOC issued plaintiff his first right-to-sue letter. *In re: Mark E. Robinson & Kimberly A. Robinson*, No. 12-22685, Dkt. 52 (Bankr. D. Md. May 21, 2013). After the discharge, plaintiff disclosed this lawsuit to his bankruptcy attorney, who informed him that the suit "did not matter as a bankruptcy discharge had already been issued." (Robinson Aff. ¶ 8.)

In September of 2013, plaintiff received a correspondence from the bankruptcy trustee regarding "additional potential assets" and assumed that the trustee was referring to this action. (*Id.* ¶ 9.) Plaintiff attempted to contact the trustee multiple times to confirm his assumption, but was referred to his bankruptcy attorney. (*Id.*) On October 22, 2013, the bankruptcy trustee submitted a "No Distribution Report," indicating that there was no property available for distribution to creditors and stating that the total claims scheduled to be discharged without payment amounted to $967,633.69. *In re: Mark E. Robinson & Kimberly A. Robinson*, No. 12-22685, Dkt. 61 (Bankr. D. Md. Oct. 22, 2013). Two days later, the bankruptcy court issued a final decree that the estate had been "fully administered," discharging the trustee and closing the case. *In re: Mark E. Robinson & Kimberly A. Robinson*, No. 12-22685, Dkt. 62 (Bankr. D. Md. Oct. 24, 2013).

Defendant argues that plaintiff should be judicially estopped from bringing this complaint pursuant to *Moses v. Howard University Hospital*, 606 F.3d 789 (D.C. Cir. 2010), because he did not list the underlying causes of action on his bankruptcy petition or otherwise disclose the causes of action during the bankruptcy proceedings. (Mot. at 2.) Plaintiff declares that "[a]t no time was [he] trying to hide any information or mislead anyone with regard to this law suit"

3

(Robinson Aff. ¶ 10), and that he "will gladly reopen the bankruptcy case to include this case if necessary and ha[s] been made aware that any debtors from the bankruptcy case could come after any judgment or recovery in this case." (*Id.* ¶ 11.)

**LEGAL STANDARD**

**I.     MOTION TO DISMISS**

Defendants concede that the factual allegations in plaintiff's amended complaint "allege viable causes of action under Title VII . . . and the District of Columbia Whistleblower Protection Act" (Mot. at 1), but argue that the allegations also establish that judicial estoppel bars those claims. (*Id.* at 1-2.) When ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts must assume the veracity of all "well-pleaded factual allegations" contained in the complaint and draw all reasonable inferences in plaintiff's favor. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Atherton v. D.C. Office of Mayor,* 567 F.3d 672, 681 (D.C. Cir. 2009). In so doing, a court is not limited to the facts alleged in the complaint, but also may consider documents attached to or incorporated by reference in the complaint, matters about which the court may take judicial notice, and any documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and are integral to a claim. *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.,* 722 F. Supp. 2d 20, 24 (D.D.C.2010); *see also* Fed. R. Civ. P. 10(c). For the purposes of this case, the Court also will consider – and presume the veracity of – the contents of plaintiff's January 20, 2014 affidavit, which the Court requested by its January 6, 2014 Order.[2]

---

[2] There is no need to convert defendant's motion to dismiss to a motion for summary judgment, for the Court has concluded that as a matter of law defendant's explanations for his failure to disclose this cause of action during his bankruptcy proceedings do not rise to the level of a defense from judicial estoppel under *Moses*, and thus, the Court need not determine whether plaintiff's affidavit is credible.

4

## II. BANKRUPTCY CODE'S DUTY TO DISCLOSE

Section 521 of the Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities; a schedule of current income and current expenditures; [and] a statement of the debtor's financial affairs." 11 U.S.C. § 521(a)(1)(B). Pending and potential causes of action are assets that must be scheduled under section 521. *See Eubanks v. CBSK Financial Grp., Inc.,* 385 F.3d 894, 897 (6th Cir. 2004); *In re Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir.1999). Thus, "a debtor is under a duty both to disclose the existence of pending lawsuits when he files a petition in bankruptcy and to amend his petition if circumstances change during the course of the bankruptcy." *Moses*, 606 F.3d at 793. "Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized." *In re Coastal Plains,* 179 F.3d at 208.

## III. JUDICIAL ESTOPPEL

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted). As defined by the D.C. Circuit, "[t]here are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?" *Moses*, 606 F.3d at 798. "[A] court may not invoke judicial estoppel against a party (1) who has engaged in misconduct in a separate judicial

5

proceeding, (2) but there is no meaningful connection between that proceeding and the judicial proceeding in which judicial estoppel is sought. There must be a discernible connection between the two proceedings." *Id.* at 799. Moreover, the doctrine is inappropriate in cases where "ommissions [by plaintiff] are the result of mere mistakes or inadvertent conduct." *Eubanks*, 385 F.3d at 898 (collecting cases); *see also New Hampshire*, 532 U.S. at 753.

In the bankruptcy context, "every circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case." *Moses*, 606 F.3d at 798 (collecting cases); *see Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013) ("[T]he federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action."). The doctrine protects the integrity of the bankruptcy system, *see In re Coastal Plains*, 179 F.3d at 208, and is meant to prevent parties from hiding causes of actions during bankruptcy proceedings, thereby obtaining a "valuable benefit in the discharge of . . . debts," and then "asserting [the causes of action] in order to win a second time." *See Cannon-Stokes v. Potter*, 453 F.3d 446, 447 (7th Cir. 2006).

## ANALYSIS

This initially seems a classic case for judicial estoppel, as all three of the *Moses* elements are met. First, plaintiff's current position is "clearly inconsistent" with his prior position before the bankruptcy court. *See Moses*, 606 F.3d at 799. Plaintiff had two complaints pending before the EEOC when he (and his wife) filed for bankruptcy on July 9, 2012. Yet, he did not disclose the EEOC complaints (or the underlying causes of action) as current or potential causes of action under Schedule B, or as suits or administrative proceedings to which he was a party in the

Statement of Financial Affairs. And now, after having his debts discharged on May 21, 2013, he seeks to assert those undisclosed causes of action before this Court. Second, the bankruptcy court's decision to discharge plaintiff from Chapter 7 without consideration of the pending EEOC complaints and underlying discrimination claims "leaves little doubt that [plaintiff] succeeded in hiding the inconsistency from the" bankruptcy court and creates the perception that the bankruptcy court was misled. *See id.* And, finally, allowing plaintiff's claims to proceed would provide an unfair advantage for plaintiff over both creditors of his now-discharged debt, as well as defendant, with whom plaintiff's trustee could have settled the matter or dismissed it had the cause of action been properly disclosed. *See id.*[3]

Nonetheless, plaintiff argues that the *equitable* nature of judicial estoppel, *see New Hampshire*, 532 U.S. at 750, should foreclose its application under the specific facts of this case. Plaintiff offers two reasons. First, plaintiff argues that there is "no meaningful connection" between plaintiff's bankruptcy case and this action. (Opp'n at 5.) While it is true that judicial estoppel may apply only if there exists some "meaningful connection between [the earlier] proceeding and the judicial proceeding in which judicial estoppel is sought," *Moses*, 606 F.3d at 799, the connection demanded does not erect a high bar. As evidenced by the cases cited in

---

[3] Plaintiff asserts that he is willing to reopen his bankruptcy proceeding to disclose his causes of action (Robinson Aff. ¶ 11) and argues this would alleviate any unfair advantage over his creditors. (Opp'n at 4.) The Ninth Circuit recently held that the reopening of a bankruptcy proceeding to disclose a previously undisclosed claim lessens the stringency of the judicial estoppel analysis. *See Ah Quin*, 733 F.3d at 272-77. Controlling precedent in this jurisdiction forecloses this approach. As the D.C. Circuit emphasized in *Moses*, allowing a debtor "'to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive' for the debtor 'to provide the bankruptcy court with a truthful disclosure of [his] assets.'" 606 F.3d at 800 (*quoting Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)).

Plaintiff's argument that the District of Columbia faces "no unfair detriment" if the case were allowed to continue (Opp'n at 4) is also foreclosed by *Moses*. *See id.* at 799 ("[Plaintiff's] inconsistent positions also adversely affected [defendant]. Had the trustee known of this lawsuit during the Chapter 7 bankruptcy proceedings, she might have settled this case early or decided not to pursue it, actions that might have benefitted [defendant].")

7

*Moses*, all that is required is that a plaintiff "failed to list his claims against [a party] as assets on his bankruptcy schedules, and then later sued [that party] on the same claims." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001); *see also Cannon-Stokes*, 453 F.3d at 447; *U.S. ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 918 (8th Cir. 2001); *Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993). Because it is undisputed that those criteria are met in this case, the requisite "meaningful connection" between the relevant actions exists here. *See Moses*, 606 F.3d at 800.

Second, plaintiff argues that his failure to disclose his EEOC claims (and underlying causes of action) should be excused as "purely inadvertent."[4] (Opp'n at 4-6; Robinson Aff. ¶ 10.) The Supreme Court has instructed that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *New Hampshire*, 532 U.S. at 753 (internal quotation marks omitted). However, the Courts of Appeals "generally have interpreted [inadvertence] narrowly," *Ah Quin*, 733 F.3d at 271, such that "[t]he failure to comply with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment." *Barger v. City of Cartersville*, 348 F.3d 1289, 1295 (11th Cir. 2003); *see also In re Coastal Plains*, 179 F.3d at 210 ("[T]he debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only

---

[4] Plaintiff attempts to bolster his "inadvertence" argument by asserting that he at all times relied on the advice of his bankruptcy counsel. (*See* Opp'n at 4, 6.) Aside from the fact that plaintiff did not disclose to his bankruptcy attorney the existence of any potential causes of action until *after* the bankruptcy court granted a discharge from bankruptcy (Robinson Aff. ¶ 8), courts have routinely held that reliance on an attorney's advice – bad or not – "does not relieve the client of the consequences of her own acts" for the purposes of judicial estoppel. *Cannon-Stokes*, 453 F.3d at 449; *see also Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) ("Gardner's assertion that he simply did not know better and his attorney 'blew it' is insufficient to withstand application of the doctrine."); *Barger v. City of Cartersville*, 348 F.3d 1289, 1295 (11th Cir. 2003) ("Although it is undisputed that Barger's attorney failed to list Barger's discrimination suit on the schedule of assets despite the fact that Barger specifically told him about the suit, the attorney's omission is no panacea."). For plaintiff not only "voluntarily chose" his bankruptcy attorney, *see Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962), but also "swore, under penalty of perjury, that the [bankruptcy] filing was accurate." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 483 (6th Cir. 2010).

when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment."). *But see Dzakula v. McHugh*, -- F.3d ---, 2014 WL 128605, *2 (9th Cir. Jan. 15, 2014) (interpreting "inadvertence," after *Ah Quin*, based on the "ordinary understanding" of the term). "Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio,* infer deliberate manipulation." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157 (10th Cir. 2007). This prevailing "interpretation of 'inadvertence' is narrow in part because the motive to conceal claims from the bankruptcy court is . . . nearly always present." *Ah Quin*, 733 F.3d at 271.

Plaintiff clearly had knowledge of the undisclosed claims he now brings before this Court when he filed for bankruptcy. Although he asserts in his opposition that he did not have "actual knowledge that he possessed a potential cause of action against the Defendant prior to or during the pendency of his bankruptcy proceeding" (Opp'n at 3), his argument fails as a matter of law and is belied by undisputed facts of the case. Contrary to plaintiff's argument regarding his actual knowledge, "[t]he debtor need not know all the facts *or even the legal basis* for the cause of action; rather, if the debtor has enough information . . . to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *In re Coastal Plains*, 179 F.3d at 208 (emphasis added) (internal quotation marks omitted). Plaintiff's filing of two EEOC claims *less than a year* before filing for bankruptcy shows that he clearly had "knowledge of enough facts to know that [the] potential cause[s] of action" that he now seeks to bring "exist[ed] during the pendency of the bankruptcy." *See Hamilton*, 270 F.3d at 784.

Moreover, plaintiff's two charges before the EEOC – because they were pending when he and his wife filed for bankruptcy – independently triggered his duty of disclosure, regardless of

when he received his right-to-sue letters.[5] *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("[Plaintiff] was under a duty both to disclose the existence of her pending EEOC complaint when she filed her petition and to disclose her potential legal claims throughout the pendency of that petition"); *see also Casanova v. Pre Solutions, Inc.*, 228 F. App'x 837, 841 (11th Cir. 2007) ("Even though Plaintiff did not file a *lawsuit* before or during the pendency of his bankruptcy petition, the pending EEOC charges constitute 'administrative proceedings' and '[o]ther contingent and unliquidated claims' that Plaintiff was required to disclose on his [Statement of Financial Affairs]."); *Kamont v. West*, 83 F. App'x 1, 3 (5th Cir. 2003) ("[Plaintiff's] first three complaints filed with the EEOC were pending when she filed for bankruptcy, and they are estopped.").

While plaintiff may not have understood that his EEOC claims were required to be disclosed in the bankruptcy filings,[6] he clearly had actual knowledge that he had filed the charges with the EEOC. Indeed, plaintiff claims that defendant's allegedly discriminatory conduct underlying his EEOC claims (and the instant case) *also* contributed to his and his wife's bankruptcy. (First Amd. Compl. ¶ 29.) When a plaintiff admits that the factual basis for an undisclosed claim also contributed to his bankruptcy, courts have had little problem finding that

---

[5] Plaintiff and defendant take different positions on when the bankruptcy proceeding – and thus plaintiff's continuing duty to disclose, *see Moses*, 606 F.3d at 793 – ended. Plaintiff proceeds under the assumption that the proceeding and his duty to disclose ended upon the discharge of debts on May 21, 2013, and thus his subsequent right-to-sue letters did not trigger a duty to disclose. (*See* Opp'n at 6 ("Plaintiff did not have his right to sue letters until after he was issued a discharge order in his bankruptcy case. Thus, there was nothing to disclose.").) Defendant, in contrast, takes the more persuasive position that the proceedings and plaintiff's duty ended only once the case was closed on October 24, 2013. (*See* Mot. at 4 & n.3.) The Court need not resolve this debate, because, as explained above, even assuming plaintiff is correct that his duty to disclose ended upon discharge of his debts (and therefore before he received his right-to-sue letters), judicial estoppel still applies because plaintiff failed to disclose his pending EEOC charges.

[6] Importantly, plaintiff's actual knowledge of the duty to disclose (*see* Robinson Aff. ¶ 7) is irrelevant. *See In re Coastal Plains*, 179 F.3d at 212 ("Duke's claimed lack of awareness of Coastal's statutory disclosure duty for its claims against Browning is not relevant.").

the debtor-turned-plaintiff had knowledge of the undisclosed claim during the bankruptcy proceedings, *see, e.g.*, *Okan's Foods, Inc. v. Windsor Assocs. Ltd. P'ship*, 217 B.R. 739, 756 (Bankr. E.D. Pa.1998), and that therefore judicial estoppel applied. *See Barger*, 348 F.3d at 1291 (applying judicial estoppel where defendant's alleged wrong caused bankruptcy); *Payless Wholesale Distrib.*, 989 F.2d at 571 (same); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 420 (3d Cir. 1988) (same). Accordingly, the Court concludes that the only reasonable inference to be drawn from the undisputed facts in this case is that plaintiff knew of the factual bases for his causes of action against defendant throughout his bankruptcy proceedings.[7]

Thus, the only remaining question in this case is whether plaintiff had a motive to conceal the claims he had pending before the EEOC and now brings before this Court. "[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (internal quotation marks omitted). For "[m]otivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." *Id.* (internal quotation marks

---

[7] Some courts have held that a bankruptcy trustee's knowledge of the existence of a cause of action during the pendency of the bankruptcy proceeding "precludes the application of judicial estoppel" as it shows "the plaintiff was obviously not trying to defraud the court." *See, e.g.*, *Eubanks*, 385 F.3d at 898-99 & n.1 (so holding in case where plaintiff put the court and trustee on notice "through correspondence, motions, and status conference requests"). *But see Guay v. Burack*, 677 F.3d 10, 19-20 (1st Cir. 2012) ("[O]ral disclosure [of assets] does not meet the requirements of the bankruptcy code."); *Hamilton*, 270 F.3d at 784 ("[N]otifying the trustee by mail or otherwise [of a pending claim] is insufficient to escape judicial estoppel."). Plaintiff seeks to take advantage of this purported "trustee knowledge" exception to judicial estoppel by asserting in his opposition that he "told the trustee about this suit being filed." (Opp'n at 5.) Unfortunately for plaintiff, neither his complaint nor his affidavit supports this factual assertion. Instead, plaintiff's affidavit, interpreted in the light most favorable to him, indicates only that he *attempted* to inform the bankruptcy trustee of this case. (*Cf.* Robinson Aff. ¶ 9.) Accordingly, even assuming the application of a broad "trustee knowledge" exception, the Court cannot deny defendant's motion on the ground that the bankruptcy trustee had knowledge of the instant causes of action. The Court also notes that it is unclear whether informing a bankruptcy trustee of a pending or potential cause of action *after* the bankruptcy discharge would be sufficient. Indeed, plaintiff's position that he attempted to inform the trustee *after* discharge is inconsistent with his position elsewhere that he, upon discharge, had no duty to disclose. *See supra* n.5.

omitted). Nonetheless, courts have been reticent to hold that the obvious (and general) benefits of a debtor's non-disclosure in a bankruptcy proceeding produce an irrebuttable presumption that the debtor-turned-plaintiff harbored a motive to conceal during that proceeding. Instead, a court must weigh the generally reasonable assumption that non-disclosing debtor gains an advantage (and thus has a motive) against "the specific facts of a case." *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006). To hold otherwise "would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 364 (3d Cir. 1996). As a result, courts have refused to apply judicial estoppel in instances where the benefits of any recovery on the non-disclosed claims would not have accrued to the non-disclosing party, *see Browning v. Levy*, 283 F.3d 761, 776-77 (6th Cir. 2002); where faultless trustees attempt to pursue a non-disclosed claim on behalf of the bankruptcy estate's creditors, *see, e.g.*, *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 387 (5th Cir. 2008); or where "[t]here is no evidence that the nondisclosure played any role in the confirmation of the [reorganization] plan or that disclosure of the potential claims would have led to a different result." *See Ryan Operations*, 81 F.3d at 355.

But none of those situations apply here. In this case, plaintiff had over $900,000 in debts discharged through Chapter 7 and seeks a $750,000 judgment in this action.[8] Had plaintiff disclosed his claims, his creditors may have objected to discharge of debts, *see In re Coastal*

---

[8] Plaintiff asserts in his opposition that through his EEOC complaints "[h]e was not seeking monetary compensation, [but] was seeking justice." (Opp'n at 2.) This assertion lacks support in plaintiff's amended complaint, his affidavit, or the documents attached to or incorporated by reference in his amended complaint. But even if the Court were to accept plaintiff's representation, it would not change the outcome in this case. While undisclosed claims for injunctive relief are typically not barred by judicial estoppel, *see Burnes*, 291 F.3d at 1288-89, plaintiff's decision to pursue *only* injunctive relief before the EEOC would not change the fact that when he filed for bankruptcy he knew of the factual bases for claims for monetary relief – potential claims that, upon filing for bankruptcy, became property of the bankruptcy estate. *Moses*, 606 F.3d at 795.

*Plains*, 179 F.3d at 212-13, and it would have been the trustee, not the plaintiff, who would have determined whether to pursue the claims through the EEOC, withdraw them and file suit in federal court, or seek settlement. *See Moses*, 606 F.3d at 793, 799. And plaintiff's creditors likely would have been the beneficiaries of any resolution of the claims in plaintiff's favor; indeed, even assuming judgment in the full amount requested, plaintiff may not have received any portion of the judgment. Considering the benefits of non-disclosure under the facts of this case, there can be no doubt that plaintiff had a motive to conceal this action from the bankruptcy court, *see, e.g.*, *Cannon-Stokes*, 453 F.3d at 448; *Jethroe*, 412 F.3d at 601; *Barger*, 348 F.3d at 1296; *In re Coastal Plains*, 179 F.3d at 213, and thus, plaintiff's failure to disclose his claims against defendant does not constitute inadvertence. Accordingly, plaintiff, "having obtained judicial relief on the representation that no claims existed, cannot now resurrect them and obtain relief on the opposite basis." *Payless Wholesale Distrib.*, 989 F.2d at 571.[9]

## CONCLUSION

For these reasons, the Court will **GRANT** defendant's motion to dismiss this case as judicially estopped [Dkt. No. 14]. An Order consistent with this Memorandum Opinion will be filed on this day.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: January 29, 2014

---

[9] The Court recognizes that the Ninth Circuit has recently interpreted "inadvertence" more favorably to the debtor-plaintiff based on its belief that alternative mechanisms exist to more equitably protect the integrity of the bankruptcy system (and prevent undue benefit to the debtor) than the harsh rule imposed by judicial estoppel as generally construed. *See Dzakula v. McHugh*, -- F.3d ---, 2014 WL 128605 at *1-2; *Ah Quin*, 733 F.3d at 274-278. The Court, however, is not free to adopt this approach, since it is bound by Circuit precedent, *see Moses*, 606 F.3d 789, including the holding that reopening a bankruptcy proceeding will not cure a debtor-turned-plaintiff's wrongful non-disclosure. *Id.* at 800.